IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs December 20, 2017

## VALENTINO L. DYER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rhea County**
**No. 17043     J. Curtis Smith, Judge**

_____

### No. E2017-00213-CCA-R3-PC

_____

The Petitioner, Valentino L. Dyer, appeals from the denial of his petition for post-conviction relief, wherein he challenged his convictions for especially aggravated robbery and aggravated burglary. See Tenn. Code Ann. §§ 39-13-403, -14-403. In this appeal as of right, the Petitioner alleges that trial counsel was ineffective in the following ways: (1) by failing to object to the State's deficient notice seeking enhanced punishment, thereby causing the Petitioner to be confused regarding the State's plea offer and factoring into his decision to reject the fifteen-year offer; (2) by failing to negotiate a more favorable plea offer from the State due to his "improper understanding of the Petitioner's criminal convictions"; (3) by failing to prepare the Petitioner to testify at trial; (4) by failing to visit the crime scene; (5) by failing to object to two photographs of the machete used during the break-in; (6) by failing to argue that the victim did not suffer serious bodily injury; (7) by failing to discuss with the Petitioner "any mitigating factors or the sentencing hearing" prior to the hearing itself; (8) by failing to subpoena or call witnesses on the Petitioner's behalf at the sentencing hearing; and (9) "all other reasons set forth in the petition and amended petition for post-conviction relief." Following a review of the record, all but one of the Petitioner's issues are waived due to an inadequate brief, and the single issue properly presented for review lacks merit. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Elizabeth G. Adams, Dayton, Tennessee, for the appellant, Valentino L. Dyer.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; James Michael Taylor, District Attorney General; and James W. Pope

III, and Will Dunn, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

This case arises from the Petitioner's participation with two accomplices, Timothy Swafford and Brian Shadden, in the April 27, 2008 break-in of the Rhea County home shared by Jarvis Copeland with his girlfriend, Amanda Roberts, and Roberts's ten-year-old son. See State v. Valentino L. Dyer, 2011 WL 4600652, at *1 (Tenn. Crim. App. Oct. 6, 2011), perm. app. denied (Tenn. Jan. 11, 2012). Mr. Copeland was "seriously injured" during the incident, sustaining cuts to his hands from a machete swung by the Petitioner and "severe head injuries" from repeated blows from a baseball bat swung by Shadden. See id. The men stole Mr. Copeland's wallet and car keys and broke into his vehicle parked outside before fleeing from the scene. A full recitation of the underlying facts can be found in this court's opinion on direct appeal. See id. at *1-4.

The Petitioner, Swafford, and Shadden were indicted for especially aggravated burglary, especially aggravated robbery, attempted first degree murder, and aggravated assault. See Dyer, 2011 WL 4600652, at *1. Both Swafford and Shadden subsequently negotiated fifteen-year plea bargains with the State, and each was called as a defense witness at the Petitioner's July 2009 trial. See id. At the conclusion of the jury trial, the Petitioner was found guilty of especially aggravated burglary, especially aggravated robbery, reckless endangerment, and aggravated assault. See id. The trial court modified the conviction for especially aggravated burglary to aggravated burglary and merged the convictions for aggravated assault and reckless endangerment into the especially aggravated robbery conviction. See id.

At the sentencing hearing, the trial court found the Petitioner to be a Range II, multiple offender based on his two prior felony convictions for aggravated assault. See Dyer, 2011 WL 4600652, at *5. The trial court applied two enhancement factors: that the Petitioner had a previous history of criminal convictions in addition to those necessary to establish his range and that he was on probation at the time he committed the offenses, see Tennessee Code Annotated section 40-35-114(1) & (13), and found no applicable mitigating factors. See id. Consequently, the trial court sentenced the Petitioner to concurrent terms of eight years at thirty-five percent for the aggravated burglary conviction and thirty-two years at one hundred percent for the especially aggravated robbery conviction, with the sentences to be served consecutively to his sentences in the aggravated assault cases, for which the Petitioner had been on probation at the time he committed the instant offenses. See id.

The Petitioner appealed to this court, arguing (1) that the indictment was defective for failing to state sufficient facts; (2) that he did not adequately waive his right to testify in his own defense; (3) that the trial court erred by disallowing evidence of the victims' alleged activity as drug dealers to show their reputation for dishonesty; (4) that the evidence was insufficient to sustain the convictions; and (5) that the trial court improperly sentenced him as a Range II offender and that his sentences were excessive. See Dyer, 2011 WL 4600652, at *1. This court affirmed. See id. at *1, *12.

Following his unsuccessful direct appeal, the Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed, and two successive amended petitions were filed. In the various petitions, the Petitioner raised numerous ineffective assistance of counsel claims. The allegations relevant to this appeal included the following: (1) trial counsel failed to object to the State's defective notice to seek Range II sentencing, which led to the Petitioner's being confused regarding the State's plea offer and impacted his decision-making in the plea negotiation process; (2) trial counsel failed to understand the nature of the Petitioner's prior convictions, which affected trial counsel's ability to negotiate a better plea offer; (3) trial counsel failed to "properly voir dire" the Petitioner about his decision to testify at trial; (4) trial counsel failed to investigate the crime scene; (5) trial counsel failed to argue that Mr. Copeland's injuries were merely bodily injuries rather than serious bodily injuries; (6) trial counsel failed to meet with the Petitioner to discuss and prepare for the sentencing hearing; and (7) trial counsel failed to subpoena and call witnesses on the Petitioner's behalf at the sentencing hearing. There was never any specific allegation about the machete photographs in any of the three petitions. Thereafter, a hearing was held on the matter, at which trial counsel, the Petitioner, and the Petitioner's mother testified. We will only recount the testimony from the post-conviction hearing that is relevant to the issues presented on appeal.

Trial counsel testified that he was appointed to represent the Petitioner in January 2009. On July 27, 2009, trial counsel sent the Petitioner a letter memorializing "several conversations" that they previously had in the county jail. The letter explained that the prosecutor had filed a notice to sentence the Petitioner as a Range II offender, that the Petitioner would "most likely . . . be sentenced as a Range II offender," that the Petitioner's Range II sentencing exposure for especially aggravated robbery was somewhere between twenty-five and forty years, and that consecutive sentencing was also a possibility. Trial counsel further relayed in the letter that the Petitioner's defense to the charges was "VERY WEAK" and that the "PROBABILITY OF CONVICTION AT TRIAL [WAS] EXTREMELY HIGH," especially given the fact that the Petitioner had given "two statements to the police admitting [his] participation in the crimes." Also in the letter, trial counsel advised the Petitioner to accept the State's plea offer and plead guilty, as a Range I, standard offender, to fifteen years for especially aggravated robbery

with dismissal of the remaining charges. Trial counsel confirmed that the Petitioner's initials appeared at the bottom of the letter.

Moreover, trial counsel recollected that he discussed the State's notice to seek a Range II sentencing classification with the Petitioner. That notice was introduced into evidence and specified that the Petitioner had two prior convictions—a February 10, 2006 conviction for aggravated robbery, for which he received a sentence of six years, and a February 10, 2006 conviction for aggravated assault, for which he also received a sentence of six years. Both convictions resulted from the same Rhea County indictment, according to the State's notice. Trial counsel remembered the Petitioner's conveying to him that the Petitioner did not have a prior conviction for aggravated robbery but instead had two aggravated assault convictions. Trial counsel averred that he did not discuss this with the prosecutor because aggravated assault was "just another felony" and "it wasn't going to make a difference whether it was agg[ravated] assault or agg[ravated] robbery[.]" Trial counsel affirmed that he never filed a formal objection to the State's notice.

Trial counsel testified that he would have discussed the State's plea offer within "a day or two" of receiving it. Trial counsel recalled that the Petitioner's co-defendants, Swafford and Shadden, had already entered pleas to fifteen years prior to the Petitioner's receiving the same offer. Trial counsel did not recall any "point in time during the plea negotiations . . . where [he] went back to the [d]istrict [a]ttorney and explained that [the Petitioner] did not have a prior aggravated robbery, [that the Petitioner] had two prior aggravated assaults[,] in an attempt to try to get a lower offer[.]" Furthermore, trial counsel recollected meeting with the prosecutor "several times" to review discovery materials and then going to speak with the Petitioner. When trial counsel was questioned "how many times did [he] ask [the prosecutor] to come off that [fifteen]-year sentence," trial counsel replied that he "always asked" but that he also knew the co-defendants had accepted the same offer. Trial counsel affirmed that he was not successful in negotiating a lower plea offer.

Trial counsel confirmed that the Petitioner did not testify at trial and that there was a Momon[1] hearing where the trial judge questioned the Petitioner about his right to testify. According to trial counsel, the issue of the Petitioner's prior convictions came up during the Momon hearing, and after a discussion that the Petitioner's criminal record included two aggravated assaults rather than an aggravated robbery, the State withdrew its notice of its intent to impeach the Petitioner with those convictions if he chose to testify. Ultimately, the Petitioner still did not testify.

---

[1] Referring to Momon v. State, 18 S.W.3d 152 (Tenn. 1999), where our supreme court outlined a prophylactic procedure designed to insure that a defendant's waiver of his right to testify is voluntary, knowing, and intelligent.

When asked if the Petitioner provided a motive for the crimes, trial counsel recalled the Petitioner's telling him that this occurred at "a crack house and [that the Petitioner] wanted to make sure the jury knew that," but the Petitioner provided "no particular motive" that trial counsel could remember. Trial counsel said that he attempted to explain to the Petitioner "that he basically had no defense" to these crimes because the victims had identified the Petitioner; the Petitioner gave "two confessions"; the Petitioner admitted to swinging the machete at the victim and to buying a baseball bat, stocking caps, and a machete from Walmart; there was a video recording of the Petitioner's buying these items; and the Petitioner turned over the receipt for these items to the police. Trial counsel opined that the evidence was "overwhelming[ly] against" the Petitioner. When asked if there was anything he could have done differently "that would have resulted in a different decision in this matter," trial counsel responded, "Only if I'd been successful in getting [the Petitioner] to plead."

Moreover, trial counsel could not remember whether he had any discussions with the Petitioner regarding Mr. Copeland's "injuries to his hands." Trial counsel confirmed that he was provided with discovery materials, which included information about Mr. Copeland's medical treatment.

In addition, trial counsel confirmed that he did not visit the crime scene. Trial counsel recalled the State's introducing photographs at trial of the machete the Petitioner used, but trial counsel had no memory of those "two photographs . . . portray[ing] what appeared to be different machetes[.]" According to trial counsel, "[i]f they showed different machetes[, he] didn't notice it." Trial counsel confirmed that he did not file a motion in limine to exclude said photographs. Although trial counsel could not recall specific discussions, trial counsel believed he likely reviewed the State's evidence with the Petitioner, as such was his custom.

Regarding the sentencing hearing, trial counsel said that he did not recall whether he filed any mitigating factors on the Petitioner's behalf. When asked if he met with the Petitioner between the trial and the sentencing hearing, trial counsel replied, "I do not recall meeting with [the Petitioner] after the trial. It's not to say that I didn't, but I just don't recall that." Trial counsel also could not recollect speaking with anyone in the Petitioner's family about their testifying at the sentencing hearing. Trial counsel averred that he "really didn't know of anybody that would be helpful" to the Petitioner at sentencing.

The thirty-three-year-old Petitioner testified that trial counsel went "over testimony that was going to be given and the State's witnesses[.]" However, according to the Petitioner, trial counsel did not visit the crime scene and did not review any photographs "of the home" with him. The Petitioner claimed that he saw the "tangible exhibits" only once when he was being interrogated by the police.

The Petitioner testified that trial counsel never discussed filing any pretrial motions with him. According to the Petitioner, "there [was] an issue" with the photographs of the machete—that being that "[t]here were two photos taken of the machete the night of the crime" and that in "[o]ne the machete was straight and the next the machete was bent." The Petitioner felt as if trial counsel should have attempted to exclude those photographs. Moreover, the Petitioner averred that he never attacked Mr. Copeland with a machete.

The Petitioner also maintained that trial counsel did not prepare him to testify at trial. According to the Petitioner, they did not discuss prior to trial "the pros and cons of whether or not [the Petitioner] should testify, or whether or not [he] should elect [his] right to remain silent[.]" The Petitioner said that he was not aware the State also intended to impeach him with "prior instances of conduct" if he chose to testify.[2] He also claimed that he did not "know before the trial that [he] was going to have two convictions brought up" if he chose to testify.

According to the Petitioner, he discussed his criminal history with trial counsel and informed trial counsel that he did not have a prior aggravated robbery conviction but two aggravated assault convictions. The Petitioner claimed that he was "under the impression" that his two aggravated assault convictions "counted as one conviction" because, while incarcerated in the county jail, he "had the officers look it up, . . . and it had been entered in the computer as one conviction" for aggravated assault. He entered a "TOMIS sentencing time sheet," his "face sheet from the Tennessee Department of Correction[]," and "a paper of [his] prior charges in the Rhea County jail" reflecting such. The Petitioner claimed that trial counsel "did not consult with [him] about [his] prior aggravated assault" and that he "was not given a fair notice to receive a Range II sentence as a result." The Petitioner said that despite the fact that he told trial counsel that the State's enhancement notice was incorrect, trial counsel "insisted that it was correct."

The Petitioner recalled discussing the State's plea offer with trial counsel. The Petitioner felt "as if this idea that [he] had an aggravated robbery was affecting the plea offer[,]" and he claimed that he expressed this concern to trial counsel. The Petitioner stated that trial counsel told him that he could not get a lower offer than fifteen years "because [the Petitioner] already ha[d] a[n] aggravated robbery conviction[,]" which was not true. The Petitioner averred that the "notice was misleading and [he] was not able to make an informed decision" about whether to accept the State's fifteen-year offer. However, the Petitioner affirmed that trial counsel discussed with him the difference between Range I and Range II sentencing classifications. When asked if he was

---

[2] The notice stated that the State would seek to impeach the Petitioner if he chose to testify with an instance of conduct that occurred in December 2008, where the Petitioner "stole a camera from Anna Martin . . . and pawned the stolen item at the Rhea County Pawn Shop."

"confused as to whether or not the two aggravated assaults could bump [him] from a Range I to a Range II[,]" the Petitioner replied, "Yes, ma'am. Actually, I did not know that it could, because as I say I thought, or was under the impression[,] that it counted as one prior conviction." Moreover, the Petitioner claimed that he was under the impression that he "was facing [fifteen] to [twenty-five] years" for an especially aggravated robbery conviction if he proceeded to trial. When confronted with trial counsel's July 27, 2009 letter, the Petitioner said, "Well, sir, it's not an adequate notice, I mean, it's not a notice of intent to seek a[n] enhanced punishment. It's a letter, that letter does not contain anything about prior aggravated assault convictions[.]" The Petitioner nonetheless confirmed that his initials appeared at the bottom of the letter.

Regarding Mr. Copeland's injuries, the Petitioner claimed that trial counsel did not discuss with him the element of serious bodily injury. The Petitioner said that he was unaware he could have attempted to obtain "an expert witness or someone to review [Mr. Copeland's] medical records[.]"

When asked if he met with trial counsel "about the sentencing hearing," the Petitioner stated, "Not that I recall." The Petitioner claimed that he and trial counsel never talked about his sentence "being enhanced due to certain factors" or "mitigated due to certain factors[.]" The Petitioner claimed that his family wanted to testify at his sentencing hearing, but he was unsure of the discussions that he had with trial counsel "had about it." According to the Petitioner, he had never had a sentencing hearing before because his prior convictions resulted from guilty pleas, so he did not know what to expect this time.

The Petitioner's mother, Diane Coleman, also testified. She stated that she was never contacted by trial counsel after the jury's verdict. She said that she would have been able to testify at the Petitioner's sentencing hearing if contacted. When asked what she would have said in addition to proclaiming a mother's love for her son, she replied that she would have testified that the Petitioner "grew up without a father in his life," explaining, "I mean, he has a father, but his father's not there. I can't say how some other people feel without their father, having a father and his not being there with you."

The post-conviction court thereafter denied the Petitioner relief in a written order filed on January 6, 2017, concluding that the Petitioner had failed to establish his claims of ineffective assistance of counsel. This timely appeal followed.

ANALYSIS

On appeal, the Petitioner frames his ineffective assistance of counsel claims as follows: (1) trial counsel failed to object to the State's deficient notice seeking enhanced punishment, thereby causing the Petitioner to be confused regarding the State's plea offer

and factoring into his decision to reject the fifteen-year offer; (2) trial counsel failed to negotiate a more favorable plea offer from the State due to his "improper understanding of the Petitioner's criminal convictions"; (3) trial counsel failed to prepare the Petitioner to testify at trial; (4) trial counsel failed to visit the crime scene; (5) trial counsel failed to object to two photographs of the machete used during the break-in; (6) trial counsel failed to argue that Mr. Copeland did not suffer serious bodily injury, instead merely suffering bodily injury; (7) trial counsel failed to discuss "any mitigating factors or the sentencing hearing" prior to the hearing itself; (8) trial counsel failed to subpoena or call witnesses on the Petitioner's behalf at the sentencing hearing; and (9) "all other reasons set forth in the petition and amended petition for post-conviction relief." The State responds with allegations of waiver and assertions that the Petitioner received the effective assistance of counsel.

## I. *Standard of Review*

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"

State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## II. *Issues Waived*

First, we address waiver and the Petitioner's severely wanting appellate brief. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides in part that a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Rule 10 of this court, which addresses inadequate briefs, provides, in relevant part, that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Most of the Petitioner's issues are presented

in extremely cursory fashion without argument stating reasons why his contentions require appellate relief and typically fail to cite to the authorities or appropriate references to the record and are, therefore, waived for failing to comply with these rules. See, e.g., Martin Dean Gibbs v. State, No. M2016-00218-CCA-R3-PC, 2016 WL 5944992, at *3 (Tenn. Crim. App. Oct. 13, 2016) (declining to review the petitioner's ineffective assistance of counsel claims due to an inadequate brief), perm. app. denied (Tenn. Feb. 16, 2107). For these reasons, all of the Petitioner's issues are waived save one—that trial counsel failed to object to the State's deficient notice seeking enhanced punishment, thereby causing the Petitioner to be confused regarding the State's plea offer and factoring into his decision to reject the fifteen-year offer. We will first briefly address the waived issues.

A. Failure to negotiate more favorable plea offer. The Petitioner argues that trial counsel failed to negotiate a more favorable plea offer from the State due to his "improper understanding of the Petitioner's criminal convictions." He merely submits this conjectural allegation and does support it with reasons why this contention requires relief—failing to articulate any argument about how trial counsel would have been able to effectuate a more favorable plea if trial counsel had a "proper understanding" of the Petitioner's criminal history. He likewise offers no legal authority or citation to the record.

Moreover, trial counsel testified that the Petitioner told him that his prior conviction was for aggravated assault not aggravated robbery, but trial counsel averred that he did not discuss this with the prosecutor because aggravated assault was "just another felony" and "it wasn't going to make a difference whether it was agg[ravated] assault or agg[ravated] robbery[.]" Trial counsel also stated that he did not recall any "point in time during the plea negotiations . . . where [he] went back to the [d]istrict [a]ttorney and explained that [the Petitioner] did not have a prior aggravated robbery, [that the Petitioner] had two prior aggravated assaults[,] in an attempt to try to get a lower offer[.]" However, on direct appeal, this court concluded that the State's notice to seek enhance punishment was not defective and that the Petitioner was properly sentenced as a Range II offender based upon the Petitioner's prior two aggravated assault convictions. See Dyer, 2011 WL 4600652, at *10-11. So, trial counsel was correct that "it wasn't going to make a difference." Trial counsel also testified that he frequently asked the prosecutor to reduce the offer, but to no avail. In addition, both co-defendants had been given the same offer, which they accepted.

The Petitioner's claim that he thought he was facing fifteen to twenty-five years for an especially aggravated robbery conviction if he proceeded to trial lacks credibility. In the July 27, 2009 letter, trial counsel outlined previous meetings, discussions about the evidence to be presented at trial, potential sentencing outcomes if the Petitioner was

convicted, and trial counsel's opinion about the outcome of a trial and his recommendation to the Petitioner to accept the State's fifteen-year plea offer. The Petitioner, while on the stand, recognized the letter and acknowledged initialing it. The Petitioner has failed to establish ineffective assistance.

B. Failure to prepare the Petitioner to testify at trial. The Petitioner states that trial counsel failed to prepare him to testify at trial but does not extrapolate further—failing to specify how trial counsel's preparation was lacking, how proper preparation by trial counsel would have influenced the Petitioner's decision to testify, or how the lack of the Petitioner's testimony negatively impacted the trial. He again offers no legal authority or citation to the record.

According to trial counsel, the issue of the Petitioner's prior convictions came up during the Momon hearing, and after a discussion that the Petitioner's criminal record included two aggravated assaults rather than an aggravated robbery, the State withdrew its notice of its intent to impeach the Petitioner with those convictions if he chose to testify. Ultimately, the Petitioner still did not testify. We note that this court addressed the Momon issue on direct appeal and concluded that the record showed that the Petitioner voluntarily and personally waived his right to testify in his own defense. See Dyer, 2011 WL 4600652, at *6-7. Again, the Petitioner has failed to prove either deficient performance or prejudice.

C. Failure to visit the crime scene. Regarding his claim that trial counsel failed to visit the crime scene, the Petitioner states only that, "in a case involving several individuals living in close proximity, counsel would need to visit [the] crime scene to review and discuss with the Petitioner." He fails to explain how "several individuals living in close proximity" had any impact on the facts surrounding the break-in, what further investigation by trial counsel of the crime scene would have revealed, or how a trial without that evidence inured to his prejudice. This court will not speculate as to what evidence further investigation by trial counsel may have uncovered. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

D. Failure to object to machete photographs. The Petitioner claims that trial counsel was ineffective for failing to object to the two machete photographs at trial. However, although the Petitioner did question trial counsel at the post-conviction hearing about these photographs, the Petitioner failed to state this issue with any specificity in his post-conviction petitions.[3] The issue was also not addressed by the post-conviction court in its order denying post-conviction relief. Tennessee Code Annotated section 40-30-110(c) provides that "[p]roof upon the petitioner's claim or claims for relief shall be

---

[3] There was a general claim in the pro se petition that trial "counsel failed to file a motion to suppress evidence when there was evidence used against the [Petitioner] that was fabricated and prejudicial."

limited to evidence of the allegations of fact in the petition." Further, section 40-30-106 states, in relevant part, that

> (d) The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.
>
> . . . .
>
> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]

There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived. Tenn. Code Ann. § 40-30-110(f).

What is more, the Petitioner only notes in his appellate brief that trial counsel did not object to the photographs but makes no argument about any basis for that objection, does not cite to any authority in support of suppression, and does not discuss how he was prejudiced by the introduction of these two photographs. Because this issue was not addressed in the order denying post-conviction relief and because the Petitioner cites no authority or any meaningful argument in his brief on appeal, we cannot conclude that he has presented sufficient evidence to overcome the presumption of waiver. See State v. Jason Christopher Underwood, No. M2014-00159-CCA-R3-PC, 2015 WL 3533718, at *7 (Tenn. Crim. App. June 5, 2015).

Nevertheless, the Petitioner failed to establish ineffective assistance of counsel. The photographs were not entered into evidence at the post-conviction hearing and are not a part of the record on appeal. We note that the trial transcripts are a part of the record on appeal, but the Petitioner failed to include the exhibits. It is an appellant's responsibility to prepare an adequate record for this court to address the issues. State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). While this court has the power to take judicial notice of the entire direct appeal record, see State ex rel. Wilkerson v. Bomar, 213 Tenn. 499, 376 S.W.2d 451, 453 (Tenn. 1964), such is not necessary in this case for a proper determination of the Petitioner's issues. Besides, from our review of the trial record, it appears that only one machete was entered into evidence as a physical exhibit, and only one photograph of the machete at the crime scene was introduced. The other two photographs entered into evidence were of an identical machete for sale at Walmart.

-12-

The Petitioner testified at the post-conviction hearing that "there [was] an issue" with the photographs—that being that "[t]here were two photos taken of the machete the night of the crime" and that in "[o]ne the machete was straight and the next the machete was bent." However, trial counsel testified that he had no memory of the "two photographs . . . portray[ing] what appeared to be different machetes[.]" According to trial counsel, "[i]f they showed different machetes[, he] didn't notice it." Trial counsel also noted that the Petitioner confessed to swinging the machete at the victim, which assertion is supported by the direct appeal opinion. See Dyer, 2011 WL 4600652, at *3-4. Accordingly, we conclude that neither deficient performance nor prejudice have been established.

E. Failure to argue that Mr. Copeland did not suffer serious bodily injury. As for the Petitioner's contention that trial counsel was ineffective for failing to argue that Mr. Copeland's injuries did not amount to "serious bodily injury," but were instead only "bodily injury,"[4] the Petitioner presents merely a bald assertion, providing no authority or evidence concerning how trial counsel could have contested the element of serious bodily injury. The Petitioner stated at the post-conviction hearing that he was unaware he could have attempted to obtain "an expert witness or someone to review [Mr. Copeland's] medical records." But he failed to present such a witness at the hearing, and we cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. See Black, 794 S.W.2d at 757.

Moreover, trial counsel testified that, based upon his review of Mr. Copeland's injuries, he "couldn't make a good faith argument that the man didn't receive serious injury." Trial counsel also noted that Mr. Copeland suffered a blood clot in his brain in addition to the injuries to his hands. Again, the direct appeal opinion, wherein this court reviewed the sufficiency of the evidence, supports trial counsel's testimony. See Dyer, 2011 WL 4600652, at *9-10 ("[T]he men broke into the home, demanded money, repeatedly struck [Mr. Copeland] with a machete, a ball bat, and a crowbar, causing him to suffer serious, life-threatening injuries, ransacked the home, took the victim's wallet and car keys, and then fled from the scene."). The post-conviction court concluded that this was a matter of trial strategy: "Given the nature of the injuries and the manner the injuries were inflicted, trial counsel chose not to prolong the jury's attention to those events[.]" We agree.

---

[4] "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" Tenn. Code Ann. § 39-11-106(a)(2). Whereas, "serious bodily" is a bodily injury "that involves: [a] substantial risk of death; [p]rotracted unconsciousness; [e]xtreme physical pain; [p]rotracted or obvious disfigurement; or [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty; or [a] broken bone of a child who is twelve (12) years of age or less[.]" Tenn. Code Ann. § 39-11-106(a)(34)(A)-(F).

F. <u>Failure to discuss any mitigating factors or the sentencing hearing</u>. The Petitioner maintains that he "was not given an opportunity to discuss any mitigating factors or the sentencing hearing with counsel." Again, there is no presentation of any argument in support of this assertion—like what mitigating factors or sentencing details trial counsel should have discussed with the Petitioner or how those factors and details would have impacted the Petitioner's sentence had they been discussed. Once more, he offers no legal authority either. In addition, trial counsel testified that he was unable to recall if he met with the Petitioner about the sentencing hearing but clarified, "It's not to say that I didn't, but I just don't recall that." When the Petitioner was asked if he met with trial counsel "about the sentencing hearing," the Petitioner replied, "Not that I recall." The Petitioner has failed to offer any proof to support this claim.

G. <u>Failure to call or subpoena witnesses at sentencing</u>. In this regard, the Petitioner states that his mother "would have testified to the Petitioner's childhood and how he grew up without a father in his life." The Petitioner fails to do anything more than provide this statement, which does not set forth why such a claim would require post-conviction relief, such as how his mother's testimony at the sentencing hearing might have resulted in a different sentencing outcome. Again, the Petitioner offers no legal citation in support of his argument, and the sentencing hearing is not a part of the appellate record. Nonetheless, we fail to see how the fact that the Petitioner grew up without a father would have caused the trial court to fashion a different sentence. The post-conviction court concluded, "[The] Petitioner has failed to show that presenting his mother at the sentencing hearing would have reasonably resulted in a different outcome." We agree. The Petitioner has failed to establish his ineffective assistance claim on this ground.

H. "<u>[A]ll other reasons set forth in the petition and amended petition for post-conviction relief</u>." The Petitioner provides no details of what "other reasons set forth in the petition and amended petition for post-conviction relief" he wishes this court to address. We will not entertain this invitation to parse the three petitions for post-conviction relief to find possible meritorious claims or address every contention for relief stated therein. Any review of "all other reasons" has been waived. <u>See e.g.</u>, <u>Algie Lavell McClure v. State</u>, No. E2013-00415-CCA-R3-PC, 2014 WL 2535191, at *32 (declining "to parse the entire record to locate additional instances of deficient performance").

### III. *Single Issue Presented*

The Petitioner argues that trial counsel failed to object to the State's deficient notice seeking enhanced punishment, thereby causing the Petitioner to be confused regarding the State's plea offer and factoring into his decision to reject the fifteen-year offer. The issue is not stated with any clarity in the brief, but the Petitioner does attempt

-14-

to explain the issue with argument and citations to the record in support of that argument. Accordingly, we will address it.

The Petitioner's main contention in this regard at the post-conviction hearing appeared to be his mistaken impression that his two aggravated assault convictions "counted as one conviction" based upon the jail documents that he had seen. Moreover, trial counsel insisted that the notice was correct, according to the Petitioner. The Petitioner said that he felt "as if this idea that [he] had an aggravated robbery was affecting the plea offer" and that trial counsel told him that he could not get a lower offer than fifteen years "because [the Petitioner] already ha[d] a[n] aggravated robbery conviction[,]" which was not true. The Petitioner averred that the "notice was misleading and [he] was not able to make an informed decision" about whether to accept the State's fifteen-year offer. The Petitioner also claimed that he was under the impression that he was facing fifteen to twenty-five years if he proceeded to trial.

Our supreme court has held that "effective counsel must be aware of the possible punishments applicable to his or her client[.]" Dean v. State, 59 S.W.3d 663, 668 (Tenn. 2001). Moreover, counsel also has a duty to render effective assistance in advising a defendant whether to accept a plea offer. See Lafler v. Cooper, 566 U.S. 156, 162 (2012). The Sixth Circuit Court of Appeals has held that it is important for trial counsel to correctly advise the defendant as to the potential punishment so that the defendant can intelligently consider any plea offer by the state:

> When considering a plea agreement, a defendant might well weigh the terms of the agreement against the maximum sentence he could receive if he went to trial. When the maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject.

Pitts v. United States, 763 F.2d 197, 201 (6th Cir. 1985). The converse must necessarily be true. That is, if the maximum possible exposure is understated, a defendant might well be influenced to choose a trial. See James Leath v. State, No. E2004-02708-CCA-R3-PC, 2005 WL 3543343, at *8 (Tenn. Crim. App. Dec. 28, 2005).

Trial counsel testified that he discussed the State's notice to seek a Range II sentence classification with the Petitioner. Furthermore, trial counsel remembered the Petitioner's conveying to him that the Petitioner did not have a prior conviction for aggravated robbery, but trial counsel averred that he did not discuss this with the prosecutor because aggravated assault was "just another felony" and "it wasn't going to make a difference whether it was agg[ravated] assault or agg[ravated] robbery[.]" As we have previously discussed, this court on direct appeal concluded that the State's notice to seek enhanced punishment was not defective and that the Petitioner was properly

-15-

sentenced as a Range II offender based upon the Petitioner's prior two aggravated assault convictions. See Dyer, 2011 WL 4600652, at *10-11. This court also noted that the Petitioner's two aggravated assault convictions did not merge because they included the element of serious bodily injury. See id. at *11 (citing Tenn. Code Ann. § 40-35-106(b)(4) ("Except for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, . . . , convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions.")). Therefore, trial counsel was correct that the nature of the conviction would not have made any difference in this case.

We have also previously concluded that the Petitioner's claim that he thought he was facing only fifteen to twenty-five years for especially aggravated robbery if he proceeded to trial lacks merit. Trial counsel's July 27, 2009 letter informed the Petitioner that the prosecutor had filed a notice to sentence the Petitioner as a Range II offender, that the Petitioner would "most likely . . . be sentenced as a Range II offender," that the Petitioner's Range II sentencing exposure for especially aggravated robbery was somewhere between twenty-five and forty years, and that consecutive sentencing was also a possibility. Also in the letter, trial counsel relayed that the Petitioner's defense to the charges was very weak, and he advised the Petitioner to accept the State's plea offer and plead guilty, as a Range I, standard offender, to fifteen years for especially aggravated robbery with dismissal of the remaining charges. The Petitioner initialed this letter.

The Petitioner made no real claim at the post-conviction hearing, instead only an inference, that he would have accepted the fifteen-year offer had he known that his aggravated assaults counted as two convictions and were sufficient to classify him as a Range II, multiple offender. We conclude that the Petitioner has failed to establish that he received improper advice about his Range II classification or that any improper advice impacted his decision to reject the fifteen-year-offer and proceed to trial. It appears that the Petitioner was aware of the information he needed to make an informed decision about whether to accept or reject the plea agreement. This issue is without merit.

CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-16-